# Illinois Official Reports

## Supreme Court

***People v. Young*, 2018 IL 122598**

| | |
|---|---|
| Caption in Supreme Court: | THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. NELSON YOUNG, Appellant. |
| Docket No. | 122598 |
| Filed | September 20, 2018 |
| Decision Under Review | Appeal from the Appellate Court for the Fourth District; heard in that court on appeal from the Circuit Court of Morgan County, the Hon. David R. Cherry, Judge, presiding. |
| Judgment | Appellate court judgment affirmed in part and vacated in part. Cause remanded with directions. |
| Counsel on Appeal | James E. Chadd, State Appellate Defender, Jacqueline L. Bullard, Deputy Defender, and Jason B. Jordan, Assistant Appellate Defender, of the Office of the State Appellate Defender, of Springfield, for appellant.<br><br>Lisa Madigan, Attorney General, of Springfield (David L. Franklin, Solicitor General, and Michael M. Glick and Daniel B. Lewin, Assistant Attorneys General, of Chicago, of counsel), for the People. |

Justices

JUSTICE NEVILLE delivered the judgment of the court, with opinion.

Chief Justice Karmeier and Justices Thomas, Kilbride, Garman, Burke, and Theis concurred in the judgment and opinion.

**OPINION**

¶ 1    Defendant, Nelson Young, was convicted of first degree murder (720 ILCS 5/9-1(a)(2) (West 2004)). The circuit court of Morgan County sentenced him to serve a term of 40 years in prison, with 215 days of presentence custody credit, and also imposed certain fines and fees. Defendant subsequently filed a successive postconviction petition, which was dismissed on the State's motion. On appeal, defendant argued, *inter alia*, that the circuit court erred in failing to award him the correct amount of presentence custody credit as required by statute.

¶ 2    The appellate court declined to address defendant's claim for additional presentence custody credit. 2017 IL App (4th) 150575-U. This court allowed defendant's petition for leave to appeal. Ill. S. Ct. R. 315 (eff. July 1, 2017).

¶ 3                                    I. BACKGROUND

¶ 4    In July 2005, defendant was charged with first degree murder (720 ILCS 5/9-1(a)(2) (West 2004)) for the stabbing death of his girlfriend, Eva Marie Davis. After undergoing a fitness examination, defendant was found unfit to stand trial in December 2005. He was temporarily transferred to the Department of Human Services for treatment and, following a second fitness hearing, was found fit for trial in March 2006. Defendant was tried and convicted by a jury, and the circuit court sentenced him to serve 40 years in prison, with 215 days of presentence custody credit. The court also ordered him to pay court costs and a DNA analysis fee. Sometime thereafter, the clerk of the circuit court recorded additional fines against defendant that had not been imposed by the circuit court as part of his sentence.

¶ 5    On direct appeal, defendant argued that the circuit court erred in admitting other-crimes evidence. The appellate court rejected that claim and affirmed his conviction and sentence. *People v. Young*, 381 Ill. App. 3d 595 (2008).

¶ 6    In April 2009, defendant, *pro se*, filed a petition for postconviction relief under the Post-Conviction Hearing Act (725 ILCS 5/122-1 *et seq.* (West 2008)), asserting that his trial counsel was ineffective based on his counsel's trial strategy, including decisions regarding the presentation of or objection to evidence and the failure to pursue defenses other than accident. The circuit court dismissed the petition as frivolous and patently without merit. See *id.* § 122-2.1(a)(2). That judgment was affirmed on appeal. *People v. Young*, No. 4-09-0486 (2011) (unpublished order under Illinois Supreme Court Rule 23).

¶ 7    In October 2014, defendant *pro se* filed a petition seeking postjudgment relief under section 2-1401 of the Code of Civil Procedure (735 ILCS 5/2-1401 (West 2014)). In that petition, defendant alleged that his trial counsel was ineffective for failing to advise the circuit court of certain facts showing that he was unfit to stand trial. Defendant further asserted that his right to due process had been violated because he was unfit at the time of trial. As relief,

defendant requested the court to order a psychological evaluation to determine whether he was fit at the time of trial.

¶ 8    The circuit court recharacterized the petition as a successive postconviction petition and advanced it to second-stage proceedings.[1] The court ultimately granted the State's motion to dismiss. Defendant sought reconsideration, contending, *inter alia*, that the circuit court erred by recharacterizing his petition as a successive postconviction petition without notifying him. In addition, defendant requested that the court vacate the dismissal and appoint counsel to represent him at the second-stage proceedings. The circuit court denied defendant's request for reconsideration.

¶ 9    On appeal, defendant raised three issues. First, he argued that the circuit court erred by recharacterizing his petition for relief from judgment as a successive postconviction petition without first admonishing him in accordance with *People v. Pearson*, 216 Ill. 2d 58 (2005). Second, he requested that the appellate court vacate certain fines recorded against him by the circuit clerk because they had not been imposed by the court as part of his sentence. Third, defendant asserted that the circuit court erred in calculating the amount of presentence custody credit to which he was entitled under section 5-4.5-100 of the Unified Code of Corrections (730 ILCS 5/5-4.5-100 (West 2014)). With regard to this contention, defendant requested that the appellate court grant him 183 days of additional credit based on the amount of time he was held in custody prior to the imposition of his sentence.

¶ 10    The appellate court agreed with defendant on the first two issues. Accordingly, the appellate court vacated the dismissal of his successive postconviction petition and remanded the case for proper admonishments in compliance with *Pearson*. 2017 IL App (4th) 150575-U, ¶¶ 34-38. The appellate court also vacated three fines that were recorded against defendant by the circuit clerk but were not included as part of the circuit court's judgment. *Id.* ¶ 46. With regard to defendant's request for additional presentence custody credit, the appellate court concluded that it lacked jurisdiction to consider the issue because it determined that such a claim cannot be raised for the first time on appeal from postconviction proceedings. As a result, the appellate court declined to address the merits of defendant's claim. *Id.* ¶¶ 42-44.

¶ 11    Defendant appeals to this court. Additional pertinent facts will be discussed in the context of the issues raised on appeal.

## II. ANALYSIS

¶ 13    The central issue in this appeal is whether defendant's claim for presentence custody credit under section 5-4.5-100 of the Unified Code of Corrections (730 ILCS 5/5-4.5-100 (West 2014)) is procedurally defaulted because it was asserted for the first time on appeal from postconviction proceedings. The determination of whether a claim is procedurally barred presents a question of law subject to *de novo* review. *People v. Thompson*, 2015 IL 118151, ¶ 25. In addition, our resolution of this issue requires statutory construction, which also presents a question of law that we review *de novo*. See *People v. Manning*, 2018 IL 122081, ¶ 16.

---

[1]Although the petition was advanced to second-stage proceedings, the circuit court did not appoint counsel to represent defendant.

¶ 14    As an initial matter, we address the appellate court's assessment of its jurisdiction to address defendant's claim for presentence custody credit. See *Thompson*, 2015 IL 118151, ¶ 26 (noting that a court of review has an independent duty to consider jurisdiction). The appellate court refused to consider the custody-credit claim, stating that it "lack[ed] jurisdiction" to do so. 2017 IL App (4th) 150575-U, ¶ 43. That determination was mistaken. The appellate court obtained jurisdiction in this matter when defendant timely filed a notice of appeal from the dismissal of his successive postconviction petition. See *Thompson*, 2015 IL 118151, ¶ 26. Although the appellate court's statement regarding its jurisdiction was inaccurate, the court ultimately determined that defendant's request for presentence custody credit was not properly presented because such a claim could not be raised for the first time on appeal from postconviction proceedings. 2017 IL App (4th) 150575-U, ¶ 44. We, therefore, address the parties' arguments as to the propriety of that conclusion.

¶ 15    Defendant argues that the appellate court erred in refusing to grant him an additional 183 days of presentence custody credit based on his failure to assert that claim in prior proceedings. The State responds that the appellate court properly declined to address the sentence-credit claim because it had been forfeited.[2]

¶ 16    The Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2014)) provides a remedy to criminal defendants who claim that substantial violations of their federal or state constitutional rights occurred in the prosecutions that resulted in their convictions. A postconviction proceeding is a collateral attack, not an appeal seeking review of the judgment. The purpose of a postconviction action is to permit inquiry into constitutional issues involved in the original trial that have not been, and could not have been, adjudicated previously upon direct review. Issues that were raised and decided on direct review are barred by the doctrine of *res judicata*, and issues that could have been presented on direct review, but were not, are procedurally defaulted. *People v. Taylor*, 237 Ill. 2d 356, 371-72 (2010). Also, any claim that is not included in the original or an amended petition is forfeited. 725 ILCS 5/122-3 (West 2014); *People v. Pendleton*, 223 Ill. 2d 458, 475 (2006); *People v. Jones*, 211 Ill. 2d 140, 144-45 (2004). However, a forfeited claim may be raised in a successive postconviction petition if the defendant can satisfy the cause-and-prejudice test. 725 ILCS 5/122-1(f) (West 2014); *Pendleton*, 223 Ill. 2d at 476; *Jones*, 211 Ill. 2d at 148-49.

¶ 17    In this case, it is uncontroverted that defendant's claim for additional presentence custody credit under section 5-4.5-100 has been forfeited. Defendant did not object to the presentence-credit calculation at the time of sentencing, in his initial posttrial motion, in his amended posttrial motion, or in the motion seeking a reduction of his sentence. The issue was not raised on direct appeal as plain error or as the basis for a claim of ineffective assistance of trial counsel, nor was it presented in a timely filed section 2-1401 petition. Defendant's initial postconviction petition did not assert the claim or allege that appellate counsel was ineffective

---

[2]Throughout its brief, the State refers to defendant's petition as seeking relief under section 2-1401, as it was labeled and initially presented in the circuit court. However, the appellate court concluded that the trial court had recharacterized that document as a successive postconviction petition and remanded for the necessary *Pearson* admonishments, which would not be required or appropriate for a section 2-1401 petition. The State has not argued that the appellate court erred in its recharacterization determination or that the remand was improper. Accordingly, we address the issues presented here under the law governing postconviction proceedings.

for failing to present it on direct appeal. Finally, defendant did not include the claim in his successive petition, which is the subject of this appeal.

¶ 18    Defendant does not dispute that his custody-credit claim could have been raised in those proceedings. He argues, however, that his failure to assert the claim earlier is of no moment because a claim for presentence custody credit is immune to the rules of procedural default. In particular, defendant claims that the applicable statutory language and relevant Illinois jurisprudence permits the assertion of his claim on appeal from the dismissal of his successive postconviction petition.

¶ 19    In addressing defendant's argument, we must construe the language codified in the presentence custody credit statute (730 ILCS 5/5-4.5-100 (West 2014). The primary objective in construing a statute is to ascertain and give effect to the intent of the legislature. The most reliable indicator of legislative intent is the language of the statute, given its plain and ordinary meaning. A court must view the statute as a whole, construing words and phrases in light of other relevant statutory provisions and not in isolation. Each word, clause, and sentence of a statute must be given a reasonable meaning, if possible, and should not be rendered superfluous. In general, courts will not depart from the statute's plain language by reading into it exceptions, limitations, or conditions the legislature did not express. *People v. Casas*, 2017 IL 120797, ¶ 18.

¶ 20    Section 5-4.5-100(b) of the Unified Code of Corrections provides, in pertinent part, as follows:

> "the offender shall be given credit on the determinate sentence or maximum term and the minimum period of imprisonment for the number of days spent in custody as a result of the offense for which the sentence was imposed. *** The trial court may give credit to the defendant for the number of days spent confined for psychiatric or substance abuse treatment prior to judgment, if the court finds that the detention or confinement was custodial." 730 ILCS 5/5-4.5-100(b) (West 2014).[3]

¶ 21    Defendant argues that, because section 5-4.5-100 provides that the grant of credit is mandatory and does not include any limitation restricting when credit requests may be asserted, claims for sentence credit under that provision are not subject to forfeiture. According to defendant, claims for presentence custody credit must be treated in the same manner as claims for *per diem* monetary credit under section 110-14 of the Code of Criminal Procedure of 1963 (725 ILCS 5/110-14 (West 2014)). In support of this argument, defendant relies on *People v. Woodard*, 175 Ill. 2d 435 (1997), and *People v. Caballero*, 228 Ill. 2d 79 (2008).

¶ 22    Both *Woodard* and *Caballero* addressed the viability of claims for *per diem* monetary credit that were raised for the first time on appeal. *Woodard* did so in the context of a direct appeal (*Woodard*, 175 Ill. 2d at 438), and *Caballero* did so in the context of an appeal from postconviction proceedings (*Caballero*, 228 Ill. 2d at 81). In resolving each case, the court examined the language of section 110-14. *Id.* at 83; *Woodard*, 175 Ill. 2d at 440, 444. The *per diem* monetary credit statute provides, in pertinent part, that a person incarcerated on a

---

[3]At the time defendant was sentenced in 2006, presentence custody credit was governed by section 5-8-7 of the Unified Code of Corrections (730 ILCS 5/5-8-7(b) (West 2006)). That section was repealed in 2009 and replaced by section 5-4.5-100. No relevant changes were made to the language or substance of the provisions.

bailable offense "shall be allowed a credit of $5 for each day so incarcerated upon application of the defendant." 725 ILCS 5/110-14(a) (West 2016).

¶ 23    In *Woodard*, the court noted that the right to monetary credit is mandatory and shall be granted "upon application" for it. *Woodard*, 175 Ill. 2d at 444. In addition, the court also noted that the statute imposes no limitation restricting the time frame during which the application must be made. *Id.* The *Woodard* court held that, under the plain language of section 110-14, "the statutory right to a *per diem* credit is conferred in mandatory terms while being subject to a defendant's application. As such, the 'normal rules' of waiver do not apply [citation], and the right is cognizable on appeal as a matter of course subject to a defendant's application for it." *Id.* at 457. Lastly, after concluding that the statutory language permitted the defendant to initially request *per diem* credit on appeal, the court observed that "the mandatory credit in section 5-8-7(b) *** has been treated similarly" by the appellate court. *Id.*

¶ 24    In *Caballero*, the court initially found that a claim for the *per diem* monetary credit under section 110-14 is a statutory right that is not cognizable under the Act. *Caballero*, 228 Ill. 2d at 87. The court went on to explain that the defendant's credit request did not allege a violation of a constitutional right but was, instead, merely an application for a different type of statutory relief. *Id.* at 87-88. The court also noted that section 110-14 lacked a specified time frame or procedural stage for a defendant to make such an application and that the grant of such credit was a " ' "simple ministerial act" ' " that would promote judicial economy by precluding further proceedings on that matter. *Id.* (quoting *Woodard*, 175 Ill. 2d at 456, quoting *People v. Scott*, 277 Ill. App. 3d 565, 566 (1996)). The court then held that "if, as in this case, the basis for granting the application of the defendant is clear and available from the record, the appellate court may, in the 'interests of an orderly administration of justice,' grant the relief requested." *Id.* at 88. The *Caballero* court also acknowledged *Woodard*'s general observation that the appellate court had treated presentence custody credit and monetary *per diem* credit similarly. *Id.* at 84 (citing *Woodard*, 175 Ill. 2d at 457).

¶ 25    In asserting that his custody-credit claim is not subject to procedural default, defendant points out that in cases decided after *Caballero* the appellate court has not been consistent in granting claims for presentence custody credit under section 5-4.5-100 that are raised for the first time on appeal. See *People v. Truesdell*, 2017 IL App (3d) 150383, ¶ 19 (granting credit on appeal from postconviction proceedings); *People v. Ross*, 2015 IL App (3d) 130077, ¶¶ 22-23 (same); *People v. Purcell*, 2013 IL App (2d) 110810, ¶¶ 8-9, 18 (same); *People v. Harper*, 387 Ill. App. 3d 240, 244 (2008) (same). But see 2017 IL App (4th) 150575-U, ¶ 44 (refusing to grant credit); *People v. Morrison*, 2016 IL App (4th) 140712, ¶ 19-21 (same); *People v. Nelson*, 2016 IL App (4th) 140168, ¶ 39 (same). Defendant asserts that this divergence in our appellate court must be resolved in favor of allowing such claims to be presented in the appellate court even where they were not raised in prior proceedings. According to defendant, all of the factors that animated the decisions in *Caballero* and *Woodard* are present in this case and, therefore, the same result should obtain here. We do not agree.

¶ 26    In both *Caballero* and *Woodard*, the conclusion that a *per diem* credit claim could be asserted for the first time on appeal was specifically predicated on the fact that section 110-14 provided that the mandatory *per diem* credit is to be granted "upon application of the defendant" without any specified time limitation for that application. *Caballero*, 228 Ill. 2d at

83, 87-88; *Woodard*, 175 Ill. 2d at 444, 457. In contrast, section 5-4.5-100 does not provide that presentence custody credit is to be granted "upon application of the defendant," nor does it contain any other language indicating that the normal rules of procedural default do not apply to claims for such credit. See 730 ILCS 5/5-4.5-100 (West 2014). Defendant argues against placing too much emphasis on the "upon application" phrase and stresses that it was just one of several reasons underlying the decisions in *Caballero* and *Woodard*. This argument is unpersuasive. A careful reading of those cases reveals that the "upon application" language was pivotal to this court's reasoning. In fact, it was the lynchpin of the analysis because it demonstrated the legislature's intent to permit a request for *per diem* credit in the appellate court, even where the issue has not been properly preserved for review. As this court has recognized, the inclusion of that statutory language was a specific and exceptional circumstance justifying a departure from our usual rules of procedural default. See *People v. Lewis*, 234 Ill. 2d 32, 42 (2009) (distinguishing the statutory basis for the decision in *Woodard*). Moreover, the general observation in *Caballero* and *Woodard* that our appellate court has treated the two types of sentence credit similarly does not detract from this conclusion. See *Caballero*, 228 Ill. 2d at 84; *Woodard*, 175 Ill. 2d at 457. Neither *Caballero* nor *Woodard* examined the provision governing presentence custody credit or specifically addressed whether that language could be construed to require that procedural default be excused. Because section 5-4.5-100 does not contain language demonstrating a legislative intent that claims for presentence custody credit are not subject to forfeiture, the reasoning employed in *Caballero* and *Woodard* does not apply.

¶ 27    Defendant urges that to treat claims for presentence custody credit differently from *per diem* credit claims is unduly harsh because the entitlement to credit that will reduce the amount of time a prisoner is confined involves significant liberty interests—concerns that are not at issue in claims for monetary credit against fines. We acknowledge the logic underlying defendant's contention. However, our decision is grounded in the plain language of section 5-4.5-100 and the fact that the legislature has not included the "upon application" language that was deliberately included in the provision governing *per diem* monetary credit. See *People v. Williams*, 239 Ill. 2d 503, 510 (2011) (rejecting the argument that section 5-4.5-100 must be construed in the same manner as section 110-14, which is part of an entirely separate code).

¶ 28    We next address defendant's argument that Illinois Supreme Court Rule 615(b) (eff. Jan. 1, 1967) permitted the appellate court to grant his claim for presentence custody credit despite the fact that it was raised for the first time on appeal from postconviction proceedings. See, *e.g.*, *People v. Andrews*, 365 Ill. App. 3d 696, 699 (2006). Rule 615(b)(1) provides that a court of review may "modify the judgment or order from which the appeal is taken," as limited by subsection (b)(4), which permits a reviewing court to "reduce the punishment imposed by the trial court." Ill. S. Ct. R. 615(b)(1), (4) (eff. Jan. 1, 1967). However, the grant of authority to modify a judgment of the circuit court cannot be isolated from the limitation that immediately follows—that modification must affect the judgment from which the appeal is taken. The judgment at issue in this case is not the sentencing order entered by the circuit court in 2006. Rather, the challenged judgment is the dismissal of defendant's successive postconviction petition, which did not assert any claim based on the miscalculation of presentence custody credit. This court has previously explained that, because the appellate court does not possess supervisory authority (see Ill. Const. 1970, art. VI, § 16 ("General administrative and supervisory authority over all courts is vested in the Supreme Court ***.")), it cannot address

postconviction claims that are not raised in the initial petition. *People v. Jones*, 213 Ill. 2d 498, 507 (2004). The same rule applies to a successive postconviction petition. The authority granted by Rule 615(b) presumes that the issue underlying the requested relief is properly before the reviewing court. That circumstance does not exist in cases where a statutory claim for presentence custody credit is presented for the first time on appeal from the dismissal of either an initial or a successive postconviction petition that did not assert the claim. *Id.*

¶ 29 Defendant also argues that the appellate court should have addressed his statutory claim for presentence custody credit as a motion to correct the mittimus. See, *e.g.*, *People v. Brown*, 371 Ill. App. 3d 972, 986 (2007); *People v. Wren*, 223 Ill. App. 3d 722, 731 (1992). This argument is misguided. As this court has recognized, although a circuit court may not modify its judgment after it has lost jurisdiction over a case, it may correct the mittimus so that it accurately reflects the judgment that was entered. *People v. Latona*, 184 Ill. 2d 260, 278 (1998). Also, the correction of a mittimus can be accomplished at any time. *Id.* This authority extends to the appellate court by virtue of Illinois Supreme Court Rule 366(a)(5) (eff. Feb. 1, 1994), which permits a reviewing court to enter any order that ought to have been made. However, the appellate court is authorized to order correction of a mittimus only where it is inconsistent with the judgment entered by the circuit court.

¶ 30 That is not the circumstance presented here. Defendant does not, and cannot, assert that the mittimus is inaccurate in this case because the judgment entered by the circuit court granted him 215 days of presentence custody credit. The relief defendant seeks is not correction of the mittimus but, rather, amendment of the sentencing judgment to reflect the correct calculation of the amount of presentence custody credit to which he is entitled. See 735 ILCS 5/2-1801(a) (West 2014) (providing that a copy of the circuit court's judgment constitutes the mittimus). That is not something that can be accomplished by the appellate court on appeal from the dismissal of a successive postconviction petition that did not raise the claim.

¶ 31 As set forth above, we find no recognized exception that applies in this case to excuse the procedural default of the custody-credit claim. Consequently, the appellate court properly refused to grant the credit requested by defendant for the first time in his appeal from the dismissal of his postconviction petition. To the extent that the appellate court's decisions in *Andrews*, *Brown*, and *Wren* hold to the contrary, they are hereby overruled.

¶ 32 Defendant has argued, in the alternative, that this court should announce a new rule in this opinion to allow a defendant to seek correction of a miscalculation of presentence custody credit at any time and at any stage of proceedings. We decline defendant's request. The assertion of an error in sentencing credit is best resolved in the circuit court, where any factual disputes as to the proper amount of credit can be adjudicated. Moreover, in *People ex rel. Berlin v. Bakalis*, 2018 IL 122435, ¶ 27, this court recently referred this matter to our rules committee. The proposal referred to the rules committee in *Bakalis* encompasses defendant's request to the extent that, if adopted, it will provide a mechanism that would enable defendants to obtain a corrected calculation of presentence custody credit in the circuit court.

¶ 33 As a second alternative argument, defendant requests that we exercise our supervisory authority to grant him the additional 183 days of presentence custody credit. The State does not oppose the request that we exercise our supervisory authority but asserts that granting the additional credit outright is inappropriate in this case. The State points out that an award of credit for time spent confined for psychiatric treatment prior to judgment is discretionary and

may be granted if the circuit court finds that the detention or confinement was custodial. 730 ILCS 5/5-4.5-100 (West 2014). As a consequence, the State contends that this case should be remanded to the circuit court for a determination of the correct amount of credit to which defendant is entitled. We agree that this is a question best answered by the circuit court.

¶ 34 Accordingly, in the exercise of our supervisory authority (Ill. Const. 1970, art. VI, § 16), we order the circuit court to address defendant's claim on remand and determine the amount of additional presentence custody credit to which he is entitled. In addition, we order the circuit court to appoint counsel to represent defendant at the proceedings on remand.

¶ 35 Finally, we address defendant's citation of our recent decision in *People v. Vara*, 2018 IL 121823, as it relates to the appellate court's judgment in this case. In *Vara*, we held that the appellate court lacks jurisdiction to consider a challenge directed at fines recorded by the circuit clerk that were not included in the sentence. *Id.* ¶¶ 13-23, 30. As explained in *Vara*, although the recording of fines not imposed by the court is invalid, the clerk's action is not subject to direct review because the appellate court is vested with jurisdiction to review only final judgments entered by the circuit court. *Id.* ¶¶ 23, 30.

¶ 36 In appealing the dismissal of his successive postconviction petition, defendant requested the vacatur of three fines recorded against him by the circuit clerk: the $50 court-finance assessment, the $10 medical-costs assessment, and the $25 violent-crime-victims-assistance assessment. 2017 IL App (4th) 150575-U, ¶ 46. The State conceded the invalidity of those assessments, and the appellate court ordered that they be vacated by the circuit court. *Id.* In accordance with our decision in *Vara*, we hold that the appellate court did not have jurisdiction to address defendant's challenge of the invalid assessments. Accordingly, we vacate the portion of the appellate court's judgment directing that the assessments be vacated by the circuit court.

¶ 37                                                    III. CONCLUSION

¶ 38 For the foregoing reasons, the judgment of the appellate court is affirmed in part and vacated in part, and the cause is remanded to the circuit court for further proceedings as ordered by the appellate court and consistent with the views expressed herein.

¶ 39 Appellate court judgment affirmed in part and vacated in part.

¶ 40 Cause remanded with directions.