# Illinois Official Reports

## Appellate Court

*People v. Warren*, 2017 IL App (3d) 150085

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DARRON L. WARREN, Defendant-Appellant. |
| District & No. | Third District<br>Docket No. 3-15-0085 |
| Filed | July 26, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Rock Island County, No. 14-CF-442; the Hon. F. Michael Meersman, Judge, presiding. |
| Judgment | Appeal dismissed. |
| Counsel on Appeal | Michael J. Pelletier, Peter A. Carusona, and Editha Rosario-Moore, of State Appellate Defender's Office, of Ottawa, for appellant.<br><br>John L. McGehee, State's Attorney, of Rock Island (Patrick Delfino, Lawrence M. Bauer, and Laura DeMichael Bialon, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| Panel | JUSTICE WRIGHT delivered the judgment of the court, with opinion.<br>Presiding Justice Holdridge concurred in the judgment and opinion.<br>Justice McDade dissented, with opinion. |

¶ 1 Following his conviction for unlawful possession of cannabis with intent to deliver, defendant, Darron L. Warren, filed a notice of appeal on January 27, 2015. The notice of appeal identified the judgment order entered on January 27, 2015, as the only order subject to defendant's notice of appeal.

¶ 2 On March 27, 2015, the circuit clerk prepared a written summary of the monetary consequences resulting from defendant's conviction. In this appeal, defendant requests our court to review and vacate portions of the circuit clerk's data entries placed in the record on March 27, 2015, subsequent to the notice of appeal filed in this case. Appeal dismissed for lack of jurisdiction.

¶ 3                                                    FACTS

¶ 4 A jury found defendant guilty of unlawful possession of cannabis with intent to deliver (720 ILCS 550/5(d) (West 2014)) on October 31, 2014. On January 27, 2015, the trial court sentenced defendant to serve a term of four years' imprisonment and ordered defendant to pay costs only. When discussing whether to set a pay date for the costs of the proceedings, the court stated: "All monies in this case are reduced to judgment because I find you don't have [the] ability to pay, and Rock Island County is not a [place] where we track you down for the rest of your life in relation to making you pay these fines and fees and costs." Defendant filed a notice of appeal the same day.

¶ 5 The written judgment order sentencing defendant to the Department of Corrections was signed by the court on January 29, 2015, and file-stamped by the circuit clerk's office on January 30, 2015. The written judgment order does not address any monetary considerations.

¶ 6 The court signed a second written order on January 29, 2015, which was also file-stamped by the circuit clerk's office on January 30, 2015. The second order set out in a preprinted form reads as follows: "It is further ordered that the defendant is ordered to pay the costs of prosecutions herein. These fees, costs and restitution are reduced to judgment against the defendant and are declared a lien against the defendant's property." Aside from a potential $250 DNA analysis fee, the second court order does not include any determination of the amount for court costs or designate either a pay date or a date certain for the court to review defendant's ability to pay costs, undetermined as of the date of sentencing, after his release.

¶ 7 Defendant filed a notice of appeal on January 27, 2015, indicating that "An appeal is taken from the Order of Judgment and Sentence" dated January 27, 2015.

¶ 8 A document labeled as the "Record of Judgment" in defendant's case appears on the record after the notice of appeal. That document, which bears a circuit court file stamp of February 6, 2015, shows a "Total Amount of Judgment" of $729.01 and a "Judgment Entered" date of February 6, 2015. The document does not bear a judicial signature or include a breakdown of the amounts incorporated into the $729.01 sum total. A similar "Record of Judgment" document appears later in the record, following this court's scheduling order. This document bears a stamp from the Rock Island county recorder, which indicates a recording date of February 9, 2015.

¶ 9 The final page of the common law record, entitled "Payment Status Information," documents the fines, costs, and fees comprising the sum total of $729.01. The top of this

document bears the computer-printed date of March 27, 2015. The fines mistakenly incorporated into the total amount of costs include a $50 court system fine (55 ILCS 5/5-1101(c) (West 2014)), a $20 Violent Crime Victims Assistance Fund fine (725 ILCS 240/10(b) (West 2014)), a $10 medical costs fine (730 ILCS 125/17 (West 2014)), a $5 youth diversion fine (55 ILCS 5/5-1101(e) (West 2014)), a $5 drug court fine (55 ILCS 5/5-1101(f) (West 2014)), a $10 State Police Services Fund fine (730 ILCS 5/5-9-1.17(b) (West 2014)), and a $15 State Police Operations Assistance Fund fine (705 ILCS 105/27.3a(1.5), (5) (West 2014)).[1]

¶ 10    To date, defendant has not voluntarily paid any portion of the $729.01 sum total of the judgment, as determined by the clerk, or been compelled to do so. Similarly, to date, defendant has not been compelled by any supplementary order signed by the trial court compelling defendant to pay any portion of the clerical data entries tabulating court costs.

¶ 11                                    ANALYSIS

¶ 12    On appeal, defendant does not challenge the trial court's order of judgment dated January 27, 2015, the subject of the notice of appeal filed on the same date. Instead, defendant asserts that the monetary amounts, compiled by the clerk on March 27, 2015, should be reduced by $115. In contrast, the State argues that this court should not exercise our jurisdiction to correct clerical entries based on the unique procedural posture of this appeal.

¶ 13    We conclude that the State's concern about the jurisdiction of this court merits further consideration. Defendant's notice of appeal focuses on the court's judgment dated January 27, 2015, but the issues presented for our review relate to the actions of the circuit clerk on March 27, 2015. Although notices of appeal are to be construed liberally, a notice of appeal does not confer jurisdiction on the appellate court unless it "fairly and adequately sets out the judgment complained of and the relief sought, thus advising the successful litigant of the nature of the appeal." (Internal quotation marks omitted.) *People v. Smith*, 228 Ill. 2d 95, 105 (2008). In *Smith*, our supreme court held that the defendant's notice of appeal was deficient where it referenced only the final judgment of conviction, but the claimant was attempting to appeal a different judgment (a judgment denyin*g* the defendant's "motion to correct sentence") that was entered approximately 15 months after the judgment of conviction. *Id.* at 103-05. We have serious concerns regarding whether the notice of appeal in this case allows our review of the clerical data entries dated March 27, 2015.

¶ 14    Next, we respectfully observe that the purported clerical errors at issue seem attributable to a common misunderstanding of what constitutes a true court cost.[2] In fact, both sides to this appeal agree that this defendant owes $115 less than the unpaid balance of court costs contained in the clerk's data entries.

---

[1]Though the itemized breakdown lists each assessment in shorthand without statutory references, for the convenience of the reader, we have referenced the above assessments with their full names and statutory citations for the sake of clarity.

[2]It is apparent to this court that the circuit clerk's staff simply misunderstood that some of the amounts included as court costs have been judicially determined to be fines. When this sentence was imposed in early 2015, neither the trial court nor the circuit clerk had guidance from this court as contained in *People v. Johnson*, 2015 IL App (3d) 140364 (appendix), identifying allowable costs.

¶ 15        With this consensus in mind, we note that an actual controversy is a necessary prerequisite for the exercise of our appellate jurisdiction. *La Salle National Bank v. City of Chicago*, 3 Ill. 2d 375, 378-79 (1954). Although an "actual controversy" involves multiple variables, the United States Supreme Court astutely stated as follows*:*

> "A justiciable controversy is thus distinguished from a difference or dispute of a hypothetical or abstract character; from one that is academic or moot. [Citation.] The controversy must be definite and concrete, touching the legal relations of parties having adverse legal interests. [Citations.] It must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *Aetna Life Insurance Co. v. Haworth*, 300 U.S. 227, 240-41 (1937).

¶ 16        We must also consider whether "the harm that a [party] claims is merely speculative or contingent" and if so, the case law provides "the claim is unripe and a court should not decide it." *Smart Growth Sugar Grove, LLC v. Village of Sugar Grove*, 375 Ill. App. 3d 780, 789 (2007). The existence of an actual controversy incorporates a number of interconnected principles of justiciability, such as standing, ripeness, mootness, advisory opinions, and political questions. *Morr-Fitz, Inc. v. Blagojevich*, 231 Ill. 2d 474, 488 (2008). "The related doctrines of standing and ripeness 'seek[ ] to insure that courts decide actual controversies and not abstract questions.' " *Lebron v. Gottlieb Memorial Hospital*, 237 Ill. 2d 217, 252 (2010) (quoting *People v. $1,124,905 U.S. Currency & One 1988 Chevrolet Astro Van*, 177 Ill. 2d 314, 328 (1997)).

¶ 17        The quest to ascertain the precisely correct but unpaid balance of costs in this case involves an abstract exercise of limited judicial resources that is meaningless. Even if we reduce the clerical balance due by $115 as defendant requests, this defendant has no present ability to pay any part of the corrected amount. Further, the trial court emphasized at the time of sentencing that "Rock Island County is not a [place] where we track you down for the rest of your life in relation to making you pay these fines and fees and costs." We do not dispute the truth of this judicial observation.

¶ 18        Significantly, as predicted by the trial judge at the time of sentencing, no one is attempting to collect any portion of the monetary component of the sentence announced by the trial court on January 27, 2015. When this defendant wins the lottery or inherits a large sum of money, the correct amount of defendant's unpaid balance may become an issue that is ripe for our review once defendant has the ability to pay something toward the judgment. At this point, it is entirely a matter of speculation whether defendant may develop the ability to pay and whether the State will pursue collection efforts at that time.

¶ 19        Fighting for a victory of record, defendant relies on *People v. Gutierrez*, 2012 IL 111590, to demonstrate that our supreme court exercised its judicial resources to resolve a clerical error after rejecting a similar jurisdictional challenge by the State. We recognize the court in *Gutierrez* vacated the cost of a public defender's fee fixed by the clerk rather than the court. In so doing, our supreme court made a reference to "void orders of the circuit clerk" (*id.* ¶ 14). However, unlike the case at bar, the erroneous clerical "order" addressed by the court in *Gutierrez* appeared of record on the same date as the judgment order subject to the notice of appeal in that case. This fact alone distinguishes *Gutierrez* from the case at bar. Respectfully, it does not appear to this court that our supreme court had an opportunity to consider ripeness or the broader issue of justiciability in *Gutierrez*.

¶ 20    In addition, we are acutely aware that our supreme court has issued a fairly recent decision clarifying the nature of truly "void" orders and judgments. See *People v. Castleberry*, 2015 IL 116916. Importantly, in another subsequent opinion, our supreme court carefully explained that the holding in *Castleberry* narrowed the "universe" of void orders allowing fewer decisions to become "subject to attack in perpetuity." See *People v. Price*, 2016 IL 118613, ¶ 31. Perhaps the reference to a "void" clerical "order" in *Gutierrez* should be treated with caution by reviewing courts until we receive guidance from our supreme court on *Castleberry*'s impact, if any, on clerical errors that arise after the notice of appeal.

¶ 21    We also consider whether the clerical data entries dated March 27, 2015, qualify as an order of any kind. Black's Law Dictionary defines an order as "[a] command, direction, or instruction," or, alternatively, "[a] written direction or command delivered by a government official, esp. a court or judge." Black's Law Dictionary 1270 (10th ed. 2014). Here, the printout of the clerk's tabulations does not direct, command, or instruct defendant to pay or to do anything. Respectfully, we are unable to conclude that the data entries created by the circuit clerk's staff on March 27, 2015, qualify as a true order, void or otherwise.

¶ 22    Finally, we observe the "Order of Judgment," dated January 27, 2015, which is identified in defendant's notice of appeal, is similar to other orders routinely signed by trial judges facing the daily challenges of sentencing offenders lacking a present ability to pay any part of skyrocketing fines and costs enacted by lawmakers to generate funds. We would be remiss if we ignored that the sentencing order, presumably prepared by the State's Attorney for the court's signature, gives a wink and a nod to the trial court's solution to a difficult and recurring problem by ignoring the legislatively-mandated fines when imposing a sentence on an indigent defendant with no present ability to pay. Until the prosecutor requests a judge to sign a supplementary order in the circuit court that specifies the precise monetary consequences of the court's sentence, we lack a concise judicial order that we are capable of reviewing for the first time on appeal without considerable speculation regarding the sum total the court intended to impose.

¶ 23    This does not mean defendant is without avenues for relief to clarify his financial obligations to the court system. Clerical miscalculations may be corrected by the circuit clerk without any court order or directive from this court. See *In re Derrico G.*, 2014 IL 114463, ¶ 107. However, to date, no one has taken any steps requesting the circuit clerk to recalculate the amount of costs based on directions from the State's Attorney, the county's legal advisor. For situations such as this, we provided guidance in *People v. Johnson*, 2015 IL App (3d) 140364 (appendix), to assist those confused about the difference between fines and costs.

¶ 24    In this appeal, defendant does not challenge any component of the court's "Order of Judgment" dated January 27, 2015. Hence, this appeal was initiated by the rare appellant that was unable to find fault with the judgment order identified in the notice of appeal. In other words, defendant is happy with the court's written order that includes no fines, an undetermined amount of costs for purposes of the judgment, and no firm deadline for payment of the monetary consequences in any amount.

¶ 25    Therefore, we conclude there is no justiciable issue subject to our review at this time for the reasons discussed at length above. Appeal dismissed.

¶ 26                                    CONCLUSION

¶ 27        For the foregoing reasons, this appeal is dismissed.


¶ 28        Appeal dismissed.


¶ 29        JUSTICE McDADE, dissenting.

¶ 30        The majority dismissed the present appeal, holding that this court does not have jurisdiction to address the issue raised by defendant. I would find, however, that this court has jurisdiction to vacate the fines added by the circuit clerk under the voidness doctrine. I therefore respectfully dissent.

¶ 31        At the outset, I note the majority holds that this court lacks jurisdiction on two distinct grounds: lack of a ripe controversy and deficiency in the notice of appeal.[3] I disagree with each of these conclusions and will address them in turn. However, I will begin by discussing the issue of voidness, which puts the jurisdictional analysis into a proper context.


¶ 32                                    I. Voidness

¶ 33        The appellate court has consistently held that fines imposed by a circuit clerk are void. *E.g.*, *People v. Wade*, 2016 IL App (3d) 150417, ¶ 9 ("Because we find that some of the assessments imposed by the circuit clerk were fines and therefore void, we vacate said fines."); *People v. Larue*, 2014 IL App (4th) 120595, ¶ 56 ("Because the imposition of a fine is a judicial act, and the circuit clerk has no authority to levy fines, any fines imposed by the circuit clerk are void from their inception."); *People v. Carter*, 2016 IL App (3d) 140196, ¶ 51; see also *Gutierrez*, 2012 IL 111590, ¶ 14.

¶ 34        The majority suggests—without explicitly holding—that clerk-imposed fines might no longer be considered void in light of our supreme court's decision in *Castleberry*, 2015 IL 116916. In *Castleberry*, the court abolished the void sentence rule, holding that voidness turns not on compliance with statute, but on whether a court has jurisdiction. Citing *People v. Price*, 2016 IL 118613, the majority posits that because *Castleberry* narrowed the "universe" of void orders, this court ought to proceed with caution in finding voidness until the supreme court may offer further guidance. See *supra* ¶ 20.

¶ 35        With all due respect to the majority, there is not an open question as to whether clerk-imposed fines are void. *Castleberry* abolished the void sentence rule; it did not call on courts to reconsider the very concept of voidness. See *Price*, 2016 IL 118613, ¶ 31 ("*Castleberry* eliminated [a single] type of void judgment, thus narrowing the universe of judgments subject to attack in perpetuity."). Indeed, the appellate court has continued to hold clerk-imposed fines void even in the aftermath of *Castleberry*. *Wade*, 2016 IL App (3d) 150417, ¶ 9; *Carter*, 2016 IL App (3d) 140196, ¶ 51; *People v. Hible*, 2016 IL App (4th) 131096, ¶ 9. As this court explained in *Wade*, "[t]he fines in this case were void, not because they failed to conform with statutory requirements, but because they were imposed not by the

_____

        [3]The majority also makes repeated reference to defendant's indigency and his inability to pay fines, even going so far as to suggest that defendant will need to "win[ ] the lottery or inherit[ ] a large sum of money" to pay the $115 in disputed fines. I respectfully submit that appellate court jurisdiction does not turn on an individual defendant's financial circumstances.

trial court, but by the circuit clerk. *Castleberry*'s abolition of the void sentence rule, therefore, is of no consequence to the issue of whether the fines are void." *Wade*, 2016 IL App (3d) 150417, ¶ 12.

¶ 36    It is well settled that a "void order may be attacked at any time or in any court, either directly or collaterally." *People v. Thompson*, 209 Ill. 2d 19, 25 (2004). The only limit upon a court's ability to correct void actions is jurisdiction. As our supreme court has stated, while "a void order may be attacked at any time, the issue of voidness must be raised in the context of a proceeding that is properly pending in the courts. If a court lacks jurisdiction, it cannot confer any relief, even from prior judgments that are void." *People v. Flowers*, 208 Ill. 2d 291, 308 (2003). The circuit clerk's imposition of $115 in fines in this case was void. However, this court may only confer relief—*i.e.*, order that those fines be vacated—if this is a "proceeding that is properly pending in the court[ ]." *Id.* Thus, we must consider our jurisdiction.

¶ 37                                II. Jurisdiction

¶ 38    The majority holds that this court does not have jurisdiction to consider defendant's argument that the fines imposed in this case are void. The majority appears to reach that conclusion on two distinct grounds. First, the majority finds that the matter is unripe and therefore nonjusticiable, contending that any harm to defendant is merely speculative and contingent until such time that he pays the fines in question or the State attempts to collect those fines. Separately, the majority implies that a deficiency in defendant's notice of appeal deprives this court of jurisdiction. The implication is that because the notice of appeal predates the imposition of fines, this court is precluded from consideration of that issue. I respectfully disagree with each of the majority's conclusions.

¶ 39                                A. Ripeness

¶ 40    I respectfully suggest that the majority's ripeness-based jurisdictional conclusion is directly contradicted by our supreme court's conclusion in *Gutierrez*, 2012 IL 111590. In that case, the court explicitly held that a reviewing court has jurisdiction to address monetary assessments that have been imposed by the circuit clerk without authority.

¶ 41    In *Gutierrez*, the circuit court declined to impose any fines or fees. *People v. Gutierrez*, 405 Ill. App. 3d 1000, 1001 (2010). Nevertheless, the circuit clerk imposed a number of assessments, including a $250 public defender fee. *Id.* at 1002. Though labeled a fee, it was and is well-settled that the public defender's fee may only be imposed by a court following notice and a hearing at which the court determines the amount of the fee. *E.g.*, *People v. Love*, 177 Ill. 2d 550, 555-56 (1997); 725 ILCS 5/113-3.1(a) (West 2014) (dictating that "*the court may order the defendant*" to pay reimbursement for representation (emphasis added)). The appellate court vacated the public defender fee and remanded so that the necessary hearing could be held. *Gutierrez*, 405 Ill. App. 3d at 1002.

¶ 42    Defendant appealed to the supreme court, arguing that the appellate court's remand was improper. *Gutierrez*, 2012 IL 111590, ¶ 1. There, for the first time, the State argued that the appellate court lacked jurisdiction because "the [public defender] fee was ordered by the circuit clerk rather than by the court, and the appellate court's jurisdiction is generally limited to reviewing final orders of the circuit court." *Id.* ¶ 7. Our supreme court rejected that argument, finding the appellate court had jurisdiction to vacate the public defender fee. *Id.* ¶ 14. In short, *Gutierrez* stands for the proposition that, as a general matter, a defendant may

challenge on appeal assessments imposed by a circuit clerk, regardless of whether they have been adopted in an order of the circuit court.

¶ 43 With respect to ripeness and justiciability, *Gutierrez* is identical to the present case in every substantive way. In each case (1) the circuit court did not impose the assessment in question, (2) the circuit clerk did not have the authority to impose the assessment, (3) the circuit clerk nevertheless imposed the assessment, (4) there was no indication that the State ever attempted to collect the assessment at issue, and (5) the State argued that the reviewing court did not have jurisdiction to review the assessment because it was not embodied in an order of the circuit court. Notably, the *Gutierrez* court did not find ripeness to be a jurisdictional roadblock to the defendant's challenge of his assessments. Simply put, *Gutierrez* is directly on point, and the majority's attempt to distinguish this case from *Gutierrez* is wholly unconvincing.

¶ 44 In fact, the only distinction the majority is able to draw between *Gutierrez* and the present case concerns the timing of the notice of appeal and the imposition of the illegal assessments. In *Gutierrez*, the public defender fee was imposed by the circuit clerk on the same day that the court imposed its sentence; here, the improper fines were apparently imposed 10 days after the court announced its sentence, 8 days after the court's written sentencing order.[4] The majority concludes: "This fact alone distinguishes *Gutierrez* from the case at bar." *Supra* ¶ 19.

¶ 45 The majority's attempt to distinguish *Gutierrez* conflates its ripeness-based jurisdictional conclusion with its notice-of-appeal-based jurisdictional conclusion. To reiterate, the majority's first conclusion was that this court lacked jurisdiction because defendant's claim was not ripe because any harm based on the erroneous imposition of fines was speculative and contingent until the State moved to collect those fines. *Gutierrez* refutes this position. The timing of the notice of appeal has absolutely no bearing on whether any harm is speculative or contingent or whether defendant's claim is ripe. Thus, with respect to the majority's ripeness-based jurisdictional conclusion, this is a distinction without a difference.

¶ 46 *Gutierrez* is substantively identical to the present case. While the majority may disagree with the result in that case, or wish to see it revisited, this court is nevertheless legally obligated to follow that precedent and conclude that defendant may challenge the present assessments. *Price v. Philip Morris, Inc.*, 2015 IL 117687, ¶ 38 (" 'Where the Supreme Court has declared the law on any point, *it alone can overrule and modify its previous opinion*, and the lower judicial tribunals are bound by such decision and it is the duty of such lower tribunals to follow such decision in similar cases.' " (Emphasis in original.) (quoting *Agricultural Transportation Ass'n v. Carpentier*, 2 Ill. 2d 19, 27 (1953)).

¶ 47                                   B. Notice of Appeal

¶ 48 The majority's alternative basis for finding that this court does not have jurisdiction in the present appeal is that defendant's notice of appeal, filed January 27, 2015, necessarily did not contemplate the fines that would be imposed 10 days later. Citing *Smith*, 228 Ill. 2d 95, the majority concludes that our jurisdiction is limited to issues related to the judgment cited in

---

[4]The majority often references the "Payment Status Information" sheet dated March 27, 2015, as the subject of this appeal. However, the sum total found on that sheet, $729.01, first appeared on the "Record of Judgment" sheet of February 6, 2015.

defendant's notice of appeal.[5] I would find that defendant's notice of appeal gives this court jurisdiction to vacate the circuit clerk's void assessments.

¶ 49    A criminal defendant's notice of appeal affects appellate jurisdiction in two separate ways. First, the timely filing of a notice of appeal confers jurisdiction upon the appellate court. Ill. S. Ct. R. 606(a) (eff. Dec. 11, 2014) ("No step in the perfection of the appeal other than the filing of the notice of appeal is jurisdictional."); see *People v. Lewis*, 234 Ill. 2d 32, 37 (2009) ("A reviewing court lacks jurisdiction and is obliged to dismiss an appeal if there is no properly filed notice of appeal.").

¶ 50    Even after a notice of appeal has been timely filed and the appeal perfected, the notice of appeal plays a continuing jurisdictional role. The notice of appeal must list the specific order or judgment from which an appeal is taken. Ill. S. Ct. R. 606(d) (eff. Dec. 11, 2014). In turn, that notice of appeal "confers jurisdiction on a court of review to consider only the judgments or parts thereof specified in the notice of appeal." *Smith*, 228 Ill. 2d at 104. In a criminal case, the key jurisdictional inquiry is whether the defendant's notice of appeal, "considered as a whole and liberally construed, adequately identifies the complained-of judgment and informs the State of the nature of the appeal." *Lewis*, 234 Ill. 2d at 39.

¶ 51    Initially, I would find that defendant's notice of appeal in the present case was sufficient for this court to vacate the void assessments imposed by the circuit clerk. Defendant's notice of appeal indicated that he was appealing from the "Order of Judgment and Sentence" dated January 27, 2015. This notice properly brought up defendant's entire conviction for review. *Gutierrez*, 2012 IL 111590, ¶¶ 12, 14. Moreover, it is well-settled that a fine is considered part of a defendant's sentence. *People v. Jones*, 223 Ill. 2d 569, 581-82 (2006).

¶ 52    Considered as a whole and liberally construed, defendant's notice of appeal would encompass any challenges to his conviction or sentence, including any fines, that are part of his sentence. While the circuit court did not impose any fines as part of the sentence, the circuit clerk improperly and illegally added to defendant's sentence by imposing fines. Though the clerk only got around to calculating defendant's assessments more than a week after he appealed, it would be unreasonable to construe that against defendant. In other words: the clerk erred once in imposing illegal fines, and essentially erred again by doing so *late*; the second error should not insulate the first error from review.[6]

¶ 53    Even if defendant's notice of appeal was deemed insufficient to bring the circuit clerk's illegal imposition of fines under our review, I would still find that this court has jurisdiction to vacate those fines under the voidness doctrine. That doctrine allows that relief may be conferred where a "proceeding *** is properly pending in the courts." *Flowers*, 208 Ill. 2d at

---

[5]Coincidentally, the court in *Gutierrez* also entertained an argument from the State based upon the defendant's notice of appeal. See *Gutierrez*, 2012 IL 111590, ¶¶ 8-12. The previously discussed distinction between *Gutierrez* and the present case with regard to the timing of the notice of appeal is, naturally, quite relevant to the particular issue of notice-of-appeal-based jurisdiction. Thus, *Gutierrez* is not binding with respect to this court's disposition of that issue.

[6]This conclusion is bolstered by the fact that the State was clearly not prejudiced by the discrepancy. See *Lewis*, 234 Ill. 2d at 37 ("The failure to comply strictly with the form of the notice is not fatal if the deficiency is nonsubstantive and the appellee is not prejudiced."). Given the glut of challenges to fines and fees that pass through the appellate court on an annual basis, the State could have been nothing if not prepared to rebut such a challenge on this appeal.

308. When defendant filed a timely notice of appeal, the matter was properly pending before this court. Ill. S. Ct. R. 606(d) (eff. Dec. 11, 2014). Thus, we have the authority to vacate as void the fines imposed by the circuit clerk. See, *e.g.*, *In re N.G.*, 2017 IL App (3d) 160277 (declaring appellant's criminal conviction void on civil appeal from parental unfitness finding).

¶ 54　　The appellate court's jurisdiction, hinging on the *contents* of a notice of appeal, is issue-specific. That is, while the filing of a notice of appeal brings a defendant's case before this court generally, the judgment or judgments listed in the notice limit the arguments the court may entertain when a disposition is made. See, *e.g.*, *People v. Shaw*, 2016 IL App (4th) 150444 (addressing some issues on the merits while finding a notice-of-appeal based lack of jurisdiction as to other issues). Voidness doctrine requires only that a proceeding be properly before the court. Indeed, the sole case the majority relies upon in reaching its conclusion on this issue, *Smith*, 228 Ill. 2d 95, did not contemplate a voidness challenge.

¶ 55　　In summary, the circuit clerk's imposition of fines where the court did not order them was illegal and void. *Gutierrez* dictates that ripeness and justiciability are not jurisdictional hurdles for defendant to challenge those assessments. Further, defendant's notice of appeal does not preclude this court from conferring relief. Accordingly, I would vacate the $115 in fines at issue.